Somebody's got to go last, Mr. Bryant. Yes. A pleasure to see you again, Your Honor. May it please the Court, I'm here on behalf of Mr. Valente. He received a maximum sentence of 20 years for fraud after pleading guilty. What I'd like to address with the Court this morning is an issue that I think has a real likelihood of recurrence, and it has to do with the criminal history category scoring. And I'd like to talk about this counting of the driving while ability impaired. And I think it's common sense that this is the kind of issue that judges in district courts will repeatedly see, very common to see, in a criminal history. And the question is, does it get scored or not? Could Application Note V resolve this, no? No, Your Honor. And actually, what I would say in it, and part of the contention here today, Judge Hall's drive is even more inconsistent and even more problematic with this Court's decision in POTUS-Castillo, on which Judge Hall was on the panel. That was a very important decision. And why that decision is also important and still, I would say, governing this issue is that the first reason why this Court in that case said that that version of Application Note V was not binding was that it was inconsistent with the text and structure of the text of the guideline that it is intended to interpret. And here, the new Application Note is, I submit, entirely inconsistent, again, with the text and structure, in fact, more inconsistent with that text and structure. And why do I say that? Well, this new Application Note says simply, convictions for driving while intoxicated and or under the influence or anything similar to that shall not be counted at all. Now, if we look at the text and structure of the guideline, it separates the either or for felonies, misdemeanors, or petty offenses, including, I assume, we'll call violations in there, noncriminal violations, separates them into three groups. First group is all felonies are counted. It's without qualification. Now, what is it that then this new Application Note has done? It has equated a and here, this is not a DWI we're talking about here. We are talking about a noncriminal traffic infraction, a DWAI. But this note was changed after Potez-Castillo, right? Yes. And Potez-Castillo. Doesn't that solve the problem? It did not at all, Your Honor, because this Court's first reason I submit, primary reason, was the Application Note at that time was inconsistent with the text. And what I'm submitting to the Court here is that this new version, Application Note, is likewise inconsistent with the text. And the end. It's not entitled to controlling weight. It is not entitled. And this. Explain how it's inconsistent with the text. Well, as I was saying, one basis is that if, first of all, let's look at the text. And the text separates it into three groups. The first group are felonies, and all felonies are counted. It's without qualification. The second group, and this is under paragraph C-1, it deals with, let's call them more serious misdemeanors, but they're not all counted. There are certain ones enumerated. And what the decision was with the text was to say, we're going to look at the sentences imposed for these enumerated misdemeanors, and we're going to say, for ones where, let's call it, they get more serious sentences. How the text says, anything, jail sentence of 30 days or more, or probation one year or more. So these are more serious sentences. We'll count those. But if it's not that in the sentence, we're going to look at the punishment, then you do not count them. And finally, this third group are even less than that, minor traffic offenses, that sort of thing. You just don't count them at all. We don't care what the court imposes a sentence. So what has it done here is we have now a DWAI that is not even a misdemeanor. It is a noncriminal traffic infraction being made equal to a felony because why it's equal is it is counted regardless of the sentence imposed. So that's number one. It's being made equal to most misdemeanors or petty violations. It will always count. I mean, the first rule is they count unless they don't count. Well, then we look at, again, POTUS Castillo, and we specifically dealt with DWAI. And this Court said it doesn't get counted all the time, and we're remanding it to the district court, and the district court said, and now what you do is it's that second category there, if it's similar to one of the enumerated offenses there. Well, the issue there for DWAI is, is it similar to careless or reckless driving? That's one of the enumerated offenses. On remand from POTUS Castillo, the district court absolutely said it is, and the way you determine whether it's similar or not, is it categorically less serious. And the district court said absolutely categorically less serious, primarily based on the fact it's not even a crime, whereas careless or reckless driving is a crime. There are other reasons why they're categorically less serious, but there's, you know, it's just less serious. Judge Weinstein, in the Eastern District, with the new application note now, the one you're dealing with here, absolutely said, in a lengthy opinion, that a DWAI is not counted. Now, yes, you need to look at actual context. The context is different there, right? It was a safety valve issue in that case. Even if Judge Weinstein is right. Isn't that context different? I would say, I would say that that fact does not control, and the reason it does not control is, if we look at his reasoning here, he had many reasons why. For example, one, I think, a driving reason there was it was not a criminal conviction. It is a non-traffic, it's a civil law violation, DWAI. So it just, it doesn't count. The other is, he looked at the application note itself, and very importantly, the application note says convictions for driving while intoxicated or under the influence or something similar. And, well, we're not dealing with a conviction. This is a non-criminal traffic infraction is not a conviction. Even if we agreed with you, let's say we agree with you that application note five shouldn't be given controlling weight. Let's say we agree with you because we say our earlier decisions seem to hold that the application note five would be inconsistent with the text of the guideline. Didn't the court below consider all the relevant circumstances and, in essence, do what you're asking for here? It concluded that your clients' infractions were more serious. Well, I would submit, if you look at the record here, the court actually did not go through the factors that it was required to go through under POTUS Castile. And it made a broad generalization. It just simply said, well, his conduct is, I don't think, I'm not sure whether he said more serious, but what, as I saw it, the court was saying, well, he kept having more DWAIs. And so he didn't learn his lesson and that sort of thing. So he had a history here. Well, if we look at the factors in POTUS Castile, it's only actually one factor in there. And if you look at the factor, it's not what the judge did. But in other words, what we are really talking about is, is it similar? Because, all right, so how do you tell if it's similar? Is it categorically more serious? How do we tell that? We look at the factors. Factors of, well, say, for example, here, and this is, again, what the district court did and Judge Weinstein did. It said, wait a minute, a huge factor making it categorically less serious is it's a violation, it's a traffic infraction. But I'll point out to many here, to demonstrate that this is, there's no mens rea requirement in DWAI. And the misdemeanor of reckless driving, of course, is a recklessness is misdemeanor. DWAI, your ability to be impaired, it may be impaired to any extent. Judge Weinstein said you don't even need to drive to be guilty of that crime. Here's the other, the factor, and I think it's very important here, is, and I think this is where district court, if it looked at the factors, confused us. And that is, factor says if the offense indicates recurring conduct, it's punishment for recurring conduct, that's the offense. Well, what type, what does that mean? It means another conviction that he did have here, which was he got two DWAI's, which made him get a misdemeanor because of recurring conduct. What it said, the issue before the court here are separate DWAI's, which are not for recurring conduct. So you're looking at the offense itself. Can I just ask about the 60-day jail term? Was that delayed due to medical issues? Yeah. I tell you, I've really looked at this record. And, Your Honor, I was not counsel below, and I'm, you know, looking at the record hard. And my view of the record before the court, and trying to be as helpful as I can to the court, is I think it's conflicting. I think that the probation office said in its note here that the record says there was a delay because of ongoing medical issues. So that's one. That's a point for the government. On the other side of it, what we have is we have the imposition of probation, a combination of probation and a jail sentence of 60 days. And then you look at a New York statute, and that New York statute says a court may impose jail sentence, but also may impose probation. And then you look at the last line of that statute, and the last line of the statute, I don't want to misquote it all here, the sentence of imprisonment shall be a condition of and run concurrently with the sentence of probation. Well, then you look at the probation officer's report in the pre-sentence report, and it says it appears that the jail term was run as a condition of probation. So I would say there's a point, what was this? And the defense counsel below said he started serving his probation. Now, if it was ongoing medical issues, I mean, typically what happens is you serve your jail time first and then you go on probation. So if he's going straight to probation, I'd just simply say the contention is that the record is, I would say, not sufficient to be able to impose a point for that. Thank you. Thank you. You've reserved a minute for rebuttal, Mr. Bryan. Mr. Clymer, good morning. May it please the Court, Stephen Clymer for the United States. I believe that my colleague's point about the DWI AI convictions are that if application note 5 is valid, then it's clear that the district court judge made the right decision here. And quite frankly, I don't understand the claim that the new application note is somehow inconsistent with the guideline. The guideline itself divides misdemeanor and petty offenses into three categories. The default position is that they're counted for purposes of calculating a criminal history score. Second, there's a subset, the C1 subset, that they apply sometimes but not always, depending on the sentence that's received or if they're similar to the instant offense. And finally, there's the category, C2, that never apply. It's clear from the lists that we get in that guideline provision that the commission made determinations about the relative severity of crimes, and they made categorical decisions, decisions that these particular crimes are always going to be treated in this particular way. The application note is simply an extension of that thinking. It's a determination by the Sentencing Commission that whatever you categorize these DWAI convictions as, whatever you may call them, a person who gets behind the wheel of an automobile after they've been drinking to the extent that it impairs their ability to drive should be treated more seriously than reckless driving and the other C2 offenses. That's not inconsistent. That's entirely consistent. It's simply a judgment decision by the Sentencing Commission. And as we say in our brief, there's ample support for that judgment decision, given the carnage that driving while under the influence of alcohol causes nationwide. We said in POTUS-Castillo that the government's reading of that section, we specifically said, was inconsistent with the text of the Guidelines section. Now the application note, isn't it the same as the government's reading? So hasn't a prior panel already made this determination? No, Your Honor. POTUS-Castillo interpreted the earlier version of Application Note 5. The earlier version of Application Note 5 was a very muddy provision, because that provision seemed to suggest in the first sentence that DWAI convictions or infractions or sentences always count. The second sentence seemed to suggest that they only escape treatment under C2, in other words, the provisions that never count. So it wasn't completely clear how to read that provision and how to meld it with the rest of the Guidelines. But when the Commission amended Application Note 5, they cleaned up that problem. And if one looks at the text of it now, it could not be more clear, but that it applies in this case. It says, "... convictions for driving while intoxicated or under the influence, and similar offenses by whatever name they are known, are always counted, without regard to how the offense is classified." And so it's simply the Commission has made a judgment decision here that these are always to be outside of subsection 1 and 2. It has made exactly the same kinds of decisions with other offenses, too, by not including them in 1 and 2. So it's as if the Commission simply amended the Guideline itself. Instead, they did it in a commentary. Now, counsel may not like that judgment call, but there's no logical argument that it's somehow inconsistent with the Guideline. Could you address the interlock device? Certainly, Your Honor. And in order to do that, I'd like to take one step back in terms of the multi-factor task that this Court has endorsed for using in making this more serious or similar to determination that this provision of the Guidelines requires. The Court said in Martinez-Santos and since then that the district court is entitled to consider, quote, any factor the district court reasonably finds relevant to the similar-to consideration. So here the district court had a decision to make with respect to the interlock device on whether it was similar to or categorically more serious than the C-2 violations in the Guideline. The interlock device violation was the last chapter in Mr. Valenti's long and sordid history of drinking and driving. By the time he got to that interlock device violation, he had been arrested and convicted four times for offenses regarding getting behind the wheel of a car and operating it while drunk. He had a long history of violations, traffic violations committed when that happened. He had a long history of violating probation, violating his conditional discharges. And the district court was entitled to consider that whole history, the multiple violations, and consider the fact that the interlock device was there, that that provision, the condition was put on him for the very purpose of avoiding additional recurrence of this violation. And considering, as this Court has said, any factor relevant, the district court thought that was reasonably relevant to a determination about whether this interlock device violation was either categorically more serious or similar to the subsection C-2 violations or even C-1 violations. And I'd submit to this Court that that was a reasonable exercise of the discretion that this Court, in many cases, has given to district courts when conducting this similar-to inquiry. This Court has made very clear it's a wide-open, far-ranging inquiry, and that was not an abuse of the district court's succession to decide that that violation was appropriately counted in the criminal history score. And, Your Honor, if I'm wrong about that, it's harmless error anyway, because if he loses that point in the calculation, he has seven criminal history points instead of eight. He remains in Category 4 for purposes of counting his guideline sentence. And what if we see some difficulty with the 60-day term? Because your adversary points to some ambiguity. Maybe you could also address that, because looking at these records, you rely on language from the PSR. That language also says, Albany City District Court records do not indicate the jail time has been officially suspended or stayed. It appears the 60 days jail time was imposed as a condition of probation. Do we really have enough here to conclude that the 60 days was the fact that he didn't serve that was as a result of a medical condition and that it's the equivalent of a suspended sentence? I believe the district court had enough to make that decision. As the Court recalls, the way the guidelines work is that you get that extra point when it's a term of imprisonment, and the guideline itself says a sentence that's, quote, totally suspended or stayed does not count as a sentence served for purposes of term of imprisonment. So here the first thing that the PSR says is that this was not a suspended or stayed sentence. So that exclusionary provision under the guideline itself clearly is not applicable here. So the thing that we're left with is that this was done for medical reasons. Now, the guideline application note doesn't talk about medical reasons as an exception to the general actually served requirement in the application note. But it's clear from the decisions from the Fifth Circuit, the Eighth Circuit, and the Eleventh Circuit that you should not read that application note literally and formalistically. You should read it sensibly. So, for example, in situations where a person hasn't, quote, actually served a sentence because it's running consecutive to some other sentence that hasn't yet been discharged completely, it would not make sense to give that defendant a windfall. It's our position that the same is true here. Here we have a defendant who, from the only evidence we have in the record, did not serve this 60-day sentence because of his own medical issues. He should not, therefore, get a windfall any more than a defendant who's got a consecutive sentence he hasn't started serving yet. This was not done because of a determination he's not going to serve, or he's not dangerous, or he's not culpable, or some other determination that he's not deserving of serving the sentence. This was done, and the record is clear on this, and it's the only evidence we have, done for his medical issues. Alitoso, can I ask you another question about sentencing? Certainly. Well, a lengthy sentence like this, where there's a challenge to its substantive reasonableness, there wasn't a lot of discussion of the 3553a factors at the sentencing by the district judge, or even a mention of the statute that I recall. What's your reaction to that? Here's my reaction, Your Honor. This is a case, and I think the salient point here is this is a within-guidelines sentence. This is not a judge having to part it upward to impose a sentence. It seems to me that in a case where a defendant is claiming that a sentence is substantively unreasonable that falls within the guidelines, it's incumbent on him to establish some fairly compelling circumstances why the judge was obligated, not had discretion to, but was obligated to vary below the guidelines, because essentially that's the claim he's making. This judge committed reversible error by not varying downward. The defendant here presented no such mitigating circumstances. In fact, to the extent there's circumstances, they're aggravating here because this defendant abused the trust of people who were family members and longtime family friends and essentially destroyed their lives economically and in other ways. And the harm that he caused those people is going to last a long time. It might be true, Your Honor, that this judge didn't specifically refer to the 3553A factors by name, although, as I'm sure you're aware, there's no obligation that he do so. This was an extremely thorough discussion of the facts of this case, the many, many claims, guideline claims the defense attorney made in this case, and this Court went through very thoroughly and clearly had an understanding of this record and an understanding of the circumstances. I'd suggest to the Court this is not a case where an in-guideline sentence was substantively unreasonable. I see my time is up. If the Court has no more questions, I'm finished. Thank you for your attention. Roberts. Thank you, Mr. Klimer. Mr. Bryan. Bryan. Judge Livingston, you asked about the inconsistency with the text, and I did make an argument as to one reason, which is equating a DWAI with felony, that first category But let me submit to you a second reason why it is inconsistent. The new application note says driving while intoxicated or under the influence or any similar offense by whatever name. It also says subparagraphs C-1 and C-2 do not apply. Well, what is that inconsistent with, then? It's absolutely inconsistent with this Court's findings in Ross Rivera, Judge Weinstein, in Paradis. And the reason it is inconsistent, what is similar, and what's been found to be similar, is careless and reckless driving. So here's the application note saying, if we didn't have the application note, we would be saying that, yes, it is, a DWAI is similar to careless and reckless driving in Category 2. This is just looking at the text itself. The application note says, no, I don't care if that is true under the text. The application note, we say now, no. So that is inconsistent. The interlock device, just quickly, it's a very similar sort of analysis. Is it categorically more serious or not? And what I would submit is that it is not. It's what it is, it's a precautionary measure for someone who does have a history of prior offenses. Well, you compare it, then, to the careless driving, careless and reckless driving, and I submit careless and reckless driving is more serious because it's the actual driving. Here we have, he did not, and we're talking about actual conduct now, he did not, didn't, there's no record of consumption of alcohol. He violated that. So there's just, it's just now, and by the way, the other thing was giving false identity to the police officer. Well, that's an enumerated offense under the last category of, in C2, and says it's never counted, it's not considered serious. Thank you, Mr. Bryan. Thank you. Thank you very much. Thank you both. We'll reserve decision.